**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Derek Anthony Kendall, | No. CV-21-00825-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of *pro se* Plaintiff Derek Anthony Kendall's applications for Social Security Widower Insurance Benefits and Supplemental Security Income by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 2) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 28, "Pl. Br."),[1] Defendant Social Security Administration Commissioner's Answering Brief (Doc. 31, "Def. Br."), and Plaintiff's Reply (Doc. 35). The Court has reviewed the parties' briefing and the Administrative Record (Doc. 19, "R.") and now reverses the Administrative Law Judge's decision (R. at 30–42) as upheld by the Appeals Council (R. at 2–5).

**I.    BACKGROUND**

In March 2013, Plaintiff applied for widower's insurance benefits under Title II of the Act and supplemental security income under Title XVI, alleging disability beginning

---

[1] The Court has also considered Plaintiff's amended Opening Brief (Doc. 33), which the Court allowed given Plaintiff's *pro se* status. (Doc. 34.) Defendant elected not to file a supplemental response.

November 12, 2009. (R. at 515–27.) Plaintiff's claims were denied initially on May 17, 2013 (R. at 116–50) and upon reconsideration on November 14, 2013. (R. at 151–76.) A prior Administrative Law Judge ("ALJ") thereafter dismissed Plaintiff's request for a hearing but on April 28, 2016, the Appeals Council vacated the dismissal and remanded for further proceedings. (R. at 183–84.)

The prior ALJ held hearings on April 18, 2017, and October 2, 2017, at which a mental health expert and a vocational expert testified, respectively. (R. at 96–115.) Both hearings were postponed based on a request by Plaintiff's representative for examination by a consultative orthopedic medical expert. (R. at 101, 112–13.) There was to be medical expert testimony at a third hearing held on January 29, 2018, but the medical expert did not receive the records and therefore was not contacted. (R. at 61.) Plaintiff and a vocational expert provided testimony at the January 29, 2018 hearing. (R. at 64–93.) Plaintiff's representative also requested medical expert interrogatories with an orthopedic specialist. (*See* R. at 31.) The ALJ denied the request, stating "there was ample evidence in the record . . . for the adjudication of the claimant's claim." (R. at 31.)

Upon considering the medical records, opinions, and testimony, the ALJ denied Plaintiff's applications on May 8, 2018. (R. at 42.) The ALJ noted that the prior ALJ found Plaintiff met the non-disability requirements for widower's insurance benefits under 42 U.S.C. § 402(f). (R. at 33.) The ALJ found Plaintiff had not engaged in substantial gainful activity since November 12, 2009. (R. at 33.) The ALJ determined Plaintiff has the following severe medically determinable impairments ("MDIs"): right hip osteoarthritis and cervical stenosis. (R. at 33.) The ALJ found that Plaintiff was further assessed with arthralgias of the right lower extremity, cervicalgia, major depressive disorder, anxiety disorder, substance abuse (which was in remission), and post-traumatic stress disorder ("PTSD"), but that these MDIs were non-severe. (R. at 33–35.) The ALJ found Plaintiff's impairments "could reasonably be expected to produce some of the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms" were not entirely consistent with the other record evidence. (R. at 37.) The ALJ

found Plaintiff has the residual functional capacity ("RFC") "to perform medium work as defined in 20 CFR Part 404.1567(c) and 416.967(c) except that he can occasionally climb and stoop; and he can perform work with no concentrated exposure to fumes, odors, dusts, gases, and poor ventilation." (R. at 36–40.) On June 6, 2019, the Appeals Council denied Plaintiff's request for review and declined to exhibit additional evidence Plaintiff had submitted to it. (R. at 2–5.) Plaintiff filed the instant action seeking judicial review of the ALJ's decision on May 7, 2021. (Doc. 2.)

The Court has reviewed the medical evidence and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. The issues before the Court for review are whether: (1) Plaintiff's impairments meet or medically equal an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Part 404; (2) the ALJ improperly evaluated the medical opinion evidence; (3) the RFC was not supported by substantial evidence; (4) the ALJ improperly evaluated Plaintiff's and the vocational expert's testimony; and (5) the ALJ improperly considered Plaintiff's side effects from his medications. (*See* Pl. Br. at 1–3; Reply at 2.)

## II.    LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id*. To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

## III.   ANALYSIS

### A.   Whether Plaintiff's Impairments Meet or Medically Equal An Impairment Listed in Appendix 1, Subpart P of 20 C.F.R. Part 404

Plaintiff's first contention is that his impairments meet or medically equal a listed impairment and that the ALJ erred in concluding otherwise at step three of the sequential analysis. (Pl. Br. at 7–12.) At step three, Plaintiff has the burden. *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2004). As this step, the ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed

impairment." *Lewis*, 236 F.3d at 512. The ALJ's determination is entitled to deference if it is supported by substantial evidence. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995).

Although the ALJ found that Plaintiff's right hip osteoarthritis and cervical stenosis constitute severe impairments, she determined these "impairments, considered singly and in combination, do not meet or medically equal the criteria of listing 1.00, or any other listing." (R. at 36.) The ALJ provided no further analysis or discussion of the pertinent evidence. As a threshold matter, this "boilerplate finding is insufficient to support a conclusion that a claimant's impairment [does not meet or equal a listed impairment]." *Lewis*, 236 F.3d at 512. The conclusory nature of the ALJ's analysis is especially problematic here because it is not clear Plaintiff fails to meet a Listing, as the ALJ found.

Plaintiff asserts that he has major joint dysfunction that meets or medically equals Listing 1.02. Defendant responds that Plaintiff failed to meet his burden to establish all the requirements of Listing 1.02; specifically, Plaintiff has not shown he is unable to ambulate effectively.[2] It is true, as Defendant notes, that Plaintiff's use of a single cane does not establish his inability to ambulate effectively. *See* 20 C.F.R., pt. 404, subpt. P, app. 1, § 100(B)(2)(b) (including as an example of ineffective ambulation "the use of a walker, two crutches or *two canes* (emphasis added)). However, Dr. Robert Gordon, the orthopedic physician who performed a consultative examination of Plaintiff, further opined that Plaintiff can neither "walk a block at a reasonable pace on rough or uneven surfaces," nor "climb a few steps at a reasonable pace with the use of a single hand rail." (R. at 1265.) If credited, these assessments would establish Plaintiff's inability to ambulate effectively. *See* 20 C.F.R., pt. 404, subpt. P, app. 1, § 100(B)(2)(b). The ALJ did not fully credit Dr. Gordon's opinion and assigned it only partial weight. (R. at 40.) Whether the ALJ erred at

---

[2] The Court considers the listings in effect when Plaintiff filed his applications, as the parties have done here. *See Smith v. Comm'r of Soc. Sec. Admin*, No. CV-21-00508, 2023 WL 2633617, at *2–3 (D. Ariz. Mar. 24, 2023) (citing, *inter alia*, *Maines v. Colvin*, 666 F. App'x 607, 608 (9th Cir. 2016) (unpublished) ("Absent express direction from Congress to the contrary, the ALJ should have continued to evaluate [the claimant's] application under the listings in effect at the time she filed her application." (citation omitted))).

1   step three therefore turns on her evaluation of Dr. Gordon's opinions at step four, which

2   the Court addresses below.

3         Plaintiff next contends he met Listing 1.04 because of his spine disorder. He points

4   to several examination findings in the record indicating nerve-root compression. Defendant

5   argues Plaintiff did not meet his burden to establish nerve-root compression, which is a

6   requirement under Listing 1.04. *See* 20 C.F.R., pt. 404, subpt. P, app. 1, § 1.04. These

7   arguments turn on interpretation of results from Plaintiff's MRIs between 2013 and 2017.

8   An MRI in May 2013 revealed disc degeneration and foraminal stenosis, among other

9   findings. (R. at 925.) In August 2015, Dr. Carrie Marder compared new MRI results to

10  those of the May 2013 MRI and found Plaintiff had mild to moderate disc degeneration,

11  mild right lateral recess stenosis, and small disc herniation at L5-S1 with neural foraminal

12  stenosis "similar to before, again with displacement and possible compression of the left

13  S1 nerve root." (R. at 823. *See also* R. at 822 ("The left S1 nerve root is slightly displaced

14  and possibly compressed in the lateral recess and the right S1 nerve root is contacted.")).

15  On August 16, 2017, Dr. James Murphy compared another round of MRI results and found

16  "[n]o significant interval change" compared to the August 2015 MRI. (R. at 1334.) Dr.

17  Murphy noted "probable contact" of the right C6 nerve root and left S1 nerve root and

18  recommended clinical correlation for radiculopathy. (R. at 1334, 1335–36.) Finally, a

19  clinical visit summary dated January 17, 2017 includes "cervical radiculopathy" among

20  Plaintiff's "conditions or problems." (R. at 1085.)

21        The parties dispute the proper interpretation of these MRI findings. For example, in

22  his Reply, Plaintiff asserts that neural foraminal stenosis *is* nerve-root compression, and

23  that the MRI findings therefore establish he meets Listing 1.04.[3] (Reply at 3–4 (citing

24  various definitions of "neural foraminal stenosis" on medical websites).) The ALJ failed to

25  discuss this evidence or indeed any of the specific criteria in Listing 1.04 other than a

26  cursory statement finding no "significant evidence to support a finding that there was

27  _____

28  [3] The Court observes that in an unpublished decision, the Ninth Circuit indicated an MRI revealing "mild left neural foraminal narrowing" supported the Listing's requirement for "evidence of nerve root compression." *Orcutt v. Kijakazi*, No. 20-16318, 2021 WL 5414855, at *1 (9th Cir. Nov. 19, 2021) (citing 20 C.F.R., p. 404, subpt. P, app. 1, § 1.04A).

radiculopathy." (R. at 37.) The Commissioner is in a better position to evaluate this medical evidence than the Court, and the Court therefore will remand for further proceedings for the ALJ to interpret and further develop the record as necessary. *See Marcia v. Sullivan*, 900 F.2d 172, 176–77 (9th Cir. 1990) (reversing ALJ's step-three determination for failure to adequately explain his determination and remanding "for proper consideration of step three equivalence because he is in a better position to evaluate the medical evidence").

**B.** **Whether the ALJ Improperly Evaluated the Medical Opinion Evidence**

Plaintiff next argues the ALJ erred in evaluating the medical opinions; namely, the opinions of Dr. Gordon, who performed the orthopedic consultative examination, and Dr. Terry Irons, Plaintiff's primary care provider. (Pl. Br. at 12–16.) The Court agrees.

When evaluating medical opinion evidence in cases filed prior to March 27, 2017, "ALJs are required to give greater weight to certain medical opinions." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022).[4] "Opinions from treating physicians receive more weight than opinions from examining physicians, and opinions from examining physicians receive more weight than opinions from non-examining physicians." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). The applicable standard depends on whether the opinion is contested. "To reject the uncontested opinion of an examining or treating doctor, an ALJ must provide 'clear and convincing' reasons supported by substantial evidence." *Id.* (citing *Lester*, 81 F.3d at 830). "Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988)). The Ninth Circuit requires this exacting standard "because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Orn*, 495 F.3d at 633).

---

[4]   In 2017, the SSA amended the regulations for evaluating medical evidence. Although the Ninth Circuit has held the new regulations displace its caselaw recognizing a hierarchy of medical opinions, *Woods v. Kijakazi*, 32 F. 4th 785, 792 (9th Cir. 2022), the new regulations apply only to claims filed on or after March 27, 2017. *Farlow*, 53 F.4th at 830.

"[W]hen an examining physician provides independent clinical findings that differ from the findings of the treating physician, such findings are 'substantial evidence.'" *Orn*, 495 F.3d at 632 (citation and quotation marks omitted). "Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence . . . or (2) findings based on objective medical tests that the treating physician has not herself considered." *Id.* (citations omitted). By contrast, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Id.*

### 1.    Dr. Gordon

The ALJ assigned only partial weight to Dr. Gordon's opinion. (R. at 40.) The ALJ found that

> Dr. Gordon relied heavily on the claimant's subjective report of symptoms and limitations in formulating his own proposed limitations. The totality of the evidence did not fully support the opinion; specifically the claimant's reported activities in producing his own music cd.

(*Id.*)

To the extent the ALJ rejected Dr. Gordon's opinion because it was not supported by the "totality of the evidence," such a broad conclusion is, standing alone, insufficient. *See Garrison*, 759 F.3d at 1012 ("The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." (citation omitted)). As an example of the lack of support for Dr. Gordon's opinions in the record, the ALJ cited the single example of "the claimant's reported activities in producing his own music cd." (R. at 40.) This is a reference generally to Plaintiff's musical hobbies and interests—on which Plaintiff testified he spent "anywhere between two to maybe six hours" a day, "maybe out of like four days a week" (R. at 68, 79)—and specifically to Plaintiff's testimony that he rearranged Beethoven's Opus 59 for guitar, "played the parts on guitar and recorded it on digitally [sic]." (R. at 79.)

The Court agrees with the ALJ that Plaintiff's recording and playing of music sounds like "pretty complex stuff." (R. at 79–80.) It would logically provide support for the ALJ's findings that Plaintiff has only mild limitations in understanding, remembering, or applying information. (*See* R. at 34.) It is not clear, however, how it is necessarily inconsistent with the medical opinions of Dr. Gordon, an orthopedic specialist whose findings focus on Plaintiff's musculoskeletal limitations. For example, Dr. Gordon diagnosed Plaintiff with chronic pain in his spine, low back, and right lower extremity. (R. at 1257.) He found Plaintiff could not sit for more than six hours, stand for more than four hours, or walk for more than four hours, and that Plaintiff's use of a cane was medically necessary. (R. at 1259–60.) He opined Plaintiff could not "walk a block at a reasonable pace on rough or uneven surfaces," nor "climb a few steps at a reasonable pace with the use of a single hand rail." (R. at 1265.) The ALJ did not explain how Plaintiff's reported musical activities are inconsistent with these opinions, and none is readily apparent.

Finally, the ALJ discounted Dr. Gordon's opinion because "Dr. Gordon relied heavily on [Plaintiff's] subjective report of symptoms and limitations in formulating his own proposed limitations." (R. at 40.) If a physician's opinion is based "to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citation omitted). "However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Id.*; *compare id.* at 1162–63 (ALJ erred in rejecting physician opinions based on the physician's "observations, diagnoses, and prescriptions, in addition to [the claimant's] self-reports"), *with Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (ALJ did not err in rejecting opinion that physician acknowledged was "based upon an uncritical acceptance of the claimant's own self serving accounts"). Here, Dr. Gordon's report was based on a review of 48 pages of medical record documentation and Dr. Gordon's own physical examinations, tests, and diagnoses, as well as Plaintiff's self reports. (R. at 1251–67.) While it is true Plaintiff's reporting of symptoms

(i.e., pain) played a significant role in Dr. Gordon's assessments, it is not clear Dr. Gordon similarly relied on Plaintiff's reporting of his limitations (e.g., walking, sitting, standing) in formulating his own. Further, it would logically follow that because assessments of pain rely, at least in part, on self-reporting, Dr. Gordon basing his opinion, at least in part, on Plaintiff's self-reporting of pain cannot be the sole reason to reject such an opinion.

Defendant argues that the ALJ's discounting of Dr. Gordon's opinion is supported by, and consistent with, other evidence in the record. (Def. Br. at 15–16.) With the exception of Dr. Gordon's opinion that Plaintiff's use of a cane is medically necessary—an issue as to which the ALJ provided a well-supported discussion—the ALJ did not reference this additional evidence in discounting Dr. Gordon's opinions. The Court is "constrained to review the reasons the ALJ asserts," and "cannot substitute [its] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusion." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492, 494–95 (9th Cir. 2015) (citation and quotation marks omitted). Finally, to the extent Defendant argues that the state-agency medical consultants' opinions, standing alone, provide substantial evidence for the rejecting Dr. Gordon's opinions, the Ninth Circuit has held the opinions of other physicians are an insufficient basis on which to reject an examining physician's opinion where they are not based on independent clinical findings. *Orn*, 495 F.3d at 632.

### 2.   Dr. Irons

The ALJ assigned no weight to the opinion of Plaintiff's primary care provider, Dr. Irons. (R. at 40.) The ALJ found Dr. Irons's assessments

> were not fully supported by the overall record, which included mild to moderate findings, consistent with limitations in the established residual functional capacity, or findings showing that the claimant had normal gait and station and did not use a cane or other assistive device.

(*Id.*) The AlJ's conclusory reference to "mild and moderate findings" in the record is insufficient because it fails to provide the Court with enough specificity to ensure it can review the ALJ's findings "meaningfully without improperly substituting [its] conclusions

1  for the ALJ's, or speculating as to the grounds for the ALJ's conclusions." *Brown-Hunter*,
2  806 F.3d at 492 (citation omitted).

3        Nor were the two references to findings in the record sufficient to support wholesale
4  rejection of Dr. Irons's opinions. The reference to Plaintiff's "normal gait and station" is
5  not a sufficient basis to reject Dr. Irons's opinions that, for example, Plaintiff had
6  significant sitting, walking, and standing limitations. *See, e.g.*, *Kyker v. Colvin*, No. CV-
7  14-00534-AC, 2015 WL 3454514, at *4 (E.D. Cal. May 29, 2015) ("The ALJ failed to
8  articulate how plaintiff's ability to walk with a normal gait negates [the physician's]
9  opinion regarding plaintiff's sitting, standing and walking limitations, requirements of a
10  sit-and-stand option, and work attendance limitations."). The same is true as to Plaintiff's
11  use of a cane—just one of many issues on which Dr. Irons gave an opinion. And while
12  Defendant points the Court to other reasons and evidence not mentioned by the ALJ, the
13  Court is once more "constrained to review the reasons the ALJ asserts." *Brown-Hunter*,
14  806 F.3d at 492. Finally, as noted, the state-agency medical consultants' opinions cannot,
15  in and of themselves, constitute substantial evidence to support rejecting Dr. Irons's
16  opinions because they are not based on independent clinical findings. *Orn*, 495 F.3d at 632.

17  **IV.  CONCLUSION**

18        The Court finds the ALJ erred in two respects: (1) failing to properly evaluate the
19  evidence as to whether Plaintiff meets Listings 1.02 and 1.04; and (2) failing to provide
20  sufficient and adequately supported reasons for discounting the opinions of the consultative
21  examining physician, Dr. Gordon, and treating physician, Dr. Irons. In light of the
22  pertinence of the medical evidence at issue, the Court cannot say these were harmless errors
23  that had only "inconsequential" effects on the outcome of Plaintiff's case. *See Stout v.
24  Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Because it finds these
25  errors reversible, the Court does not address the others asserted by Plaintiff. The remaining
26  question is whether to remand for further proceedings or apply the credit-as-true rule.

27        The credit-as-true rule, if applied here, would result in a remand of Plaintiff's case
28  for a computation and payment of benefits. *See Garrison*, 759 F.3d at 1020. It applies if

- 11 -

each part of a three-part test is satisfied. First, the ALJ must have failed to provide sufficient reasons for rejecting the claimant's testimony or medical opinions. *Id*. Next, the record must have been fully developed and further administrative proceedings would serve no useful purpose. *Id*. Further administrative proceedings serve a useful purpose when there are outstanding conflicts or ambiguities in the evidence that require resolution. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014). Finally, if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled. *Garrison*, 759 F.3d at 1020. Even if all elements of the credit-as-true rule are met, the Court maintains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.*

The credit-as-true rule does not apply here because there is ambiguity in the record and further administrative proceedings would be useful in determining whether Plaintiff was disabled during the relevant period. As noted, for example, there is evidence in the record pertaining to Listings 1.02 and 1.04 that the ALJ failed to properly evaluate at step three. The Commissioner is in a better position than the Court to interpret this evidence. *See Marcia*, 900 F.2d at 176–77. Further proceedings would also be useful to reassess the weight assigned to Dr. Gordon and Dr. Irons's opinions. Accordingly, the Court will remand this matter to the ALJ for further proceedings, including further development of the record as necessary, and a disability determination.

**IT IS THEREFORE ORDERED** reversing the May 8, 2018 decision of the ALJ (R. at 30–42) and remanding this matter to the Social Security Administration for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly and close this case.

Dated this 31st day of March, 2023.

Honorable John J. Tuchi
United States District Judge

- 12 -